# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, a foreign corporation,<br><br>    Plaintiff,<br><br>-vs-<br><br>LLOYD BROOK,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. CIV-23-420-F<br>)<br>)<br>)<br>)<br>) |

## ORDER

  Plaintiff, The Travelers Indemnity Company of Connecticut (Travelers), commenced this diversity action seeking declaratory relief pursuant to 28 U.S.C. § 2201 and § 2202. Specifically, Travelers seeks a declaration that defendant, Lloyd Brook (Brook), is not entitled to uninsured motorist coverage under an insurance policy issued by Travelers to Brook's employer, Central States Thermo King, Inc. (CSTK). Under Rule 56(a), Fed. R. Civ. P., Travelers has moved for summary judgment on its declaratory relief claim. Doc. no. 14. Brook has responded, opposing the motion. Doc. no. 15. Travelers has replied. Doc. no. 16. Upon due consideration of the parties' submissions, the court makes its determination.

Background

  CSTK is a company that provides, among other things, service and installation of Thermo King products, *i.e*., refrigerated trailer units.

  Travelers issued an insurance policy to CSTK, having a coverage period of July 1, 2021 to July 1, 2022, which included uninsured motorist (UM) coverage.

Specifically, the insurance policy provided UM coverage limited to $1,000,000.00 for any one accident or loss.

Brook was employed by CSTK as a master technician. On February 17, 2022, CSTK dispatched Brook to U.S. Foods to replace damaged or missing body parts, referred to as outer skins, on various Thermo King units. Brook drove a CSTK service vehicle to U.S. Foods. The service vehicle was a box truck with a hydraulic liftgate, also referred to as a hydraulic platform (hydraulic platform), on the back. The box truck held other equipment, including three ladders: a six-foot A-frame ladder, an eight-foot A-frame ladder, and a fourteen-foot extension ladder.

When he arrived at U.S. Foods, Brook was given a list of refrigerated trailer units he was to work on and was directed to a wash bay. A U.S. Foods representative used a tractor to pull a refrigerated trailer unit into the wash bay. He then unhooked the trailer unit from the tractor and removed the tractor from the wash bay. Brook exited his box truck and opened the doors on the back. He raised the hydraulic platform approximately five feet high. He then backed the box truck into a central position which would allow him to set a ladder on the hydraulic platform and reach the top of the trailer unit to assess what work needed to be done. The trailer unit was approximately 12 feet and 6 inches high. After putting the box truck into the central position, Brook set the parking brake and turned the box truck off. Brook positioned a ladder next to the hydraulic platform so that he could access it, then placed another ladder on the hydraulic platform itself and inspected the trailer unit. After he completed the inspection, he moved the ladders, started the box truck, and pulled it forward. The hydraulic platform remained raised, ready for use. He then backed up the box truck to re-position it to complete a task on one side of the trailer unit. He set the parking brake and removed the keys. He placed the keys in his personal toolbox located in the back of the box truck. He did this to prevent the box truck from being stolen. When he completed his task, he moved the ladders, started the

box truck, and pulled it forward. He then re-positioned the box truck so that he could complete another task. Brook re-positioned the box truck four or five times to replace the outer skins on the refrigerated trailer unit. Each time he used the raised hydraulic platform to help complete his work on the trailer unit.

When he completed all tasks on the first trailer unit, he moved the ladders, started the box truck, and moved the box truck forward and to the side so the trailer unit could be removed from the wash bay. Subsequently, a U.S. Foods representative brought a second refrigerated trailer into the wash bay.

Once the second trailer was in place, Brook repeated the same process as with the first trailer unit. He re-positioned the box truck four or five times while working on the second trailer. At one point, Brook needed to replace the top cap on the trailer unit. It was located at the very top of the trailer unit. He re-positioned the box truck, with the hydraulic platform still raised, so he could work on the top cap. He set the parking brake and turned the box truck off. He placed the box truck's keys in his personal toolbox. He unfolded the six-foot A-frame ladder, brace arms locked, and placed it on the ground next to the raised hydraulic platform. He then placed an unopened eight-foot A-frame ladder on the hydraulic platform, leaning it against the trailer unit. He climbed the ladder and stood on top of it. While he was working, Brook needed a tool. As he was descending the ladder to retrieve the tool, he slipped and fell, sustaining physical injuries. At the time of the accident, the box truck had been parked approximately 45 minutes.

Brook made a claim for UM benefits against CSTK's policy. Travelers denied the claim and filed this action. It contends that Brook is not entitled to UM benefits because his accident and injuries did not arise out of the use of a motor vehicle. Specifically, it contends that Brook's accident and injuries did not result from any transportation-related use of the box truck. Brook asserts that a genuine issue of

material fact exists as to whether his accidental injuries were causally connected to the box truck's transportation mode.

Legal Standard

Under Rule 56(a), a "party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Rule 56(a), Fed. R. Civ. P.  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Id.  In conducting its review, the court views the evidence and draws reasonable inferences in a light most favorable to Brook, the nonmoving party.  Shotts v. GEICO General Insurance Company, 943 F.3d 1304, 1314 (10th Cir. 2019).  Because the court's subject-matter jurisdiction is based on diversity jurisdiction, the court applies Oklahoma substantive law.  Id.

Discussion

In Child A., Child B. ex rel. Gaither v. Allstate Ins. Co., 323 Fed. Appx. 635 (10th Cir. 2009), the Tenth Circuit set forth the law in Oklahoma regarding UM coverage:

> Oklahoma law requires UM coverage for injuries sustained by an insured when such injuries (1) were caused by an accident, and (2) arose out of the "ownership, maintenance or use of a motor vehicle."  36 Okla. Stat. Ann. § 3636; see Mayer [v. State Farm Mut. Auto. Ins. Co., 944 P.2d 288, 290 (Okla. 1997)].  In Safeco v. Insurance Co. of America v. Sanders, the Oklahoma Supreme Court analyzed the meaning of the language in Section 3636, and announced a two-part test to be applied when determining coverage under UM policies.  803 P.2d 688, 692 (Okla. 1990).  Specifically, Safeco requires the following inquiry: (1) whether "the use of an uninsured motor vehicle is related to its transportation nature," and (2) whether the injuries alleged are "connected to that use." Id. at 694.  When both of these elements are present, then the use of the vehicle and the injury are said to be

> causally connected, requiring UM coverage. *Id*. The Oklahoma Supreme Court further discussed this test in *Mayer*, in which the court distinguished between cases where the vehicle is "the mere situs of an accident" and "those rare instances in which the automobile may be regarded to be itself the harm-dealing instrumentality." *Mayer*, 944 P.2d at 290-91 (finding no UM coverage because the "intentional act of the perpetrator did not call for the use of transportation during the commission of the crime" when the defendant used a truck as the launching site for a bomb).

Gaither at 640-641 (unpublished decision cited as persuasive pursuant to 10th Cir. R. 32.1(A)).

    Here, the injuries sustained by Brook resulted when he fell from the ladder placed on the box truck's hydraulic platform. At the time of the accident, he was descending the ladder to retrieve a tool to complete his work on the top cap of the trailer unit. When Brook fell, the box truck was parked, with the parking brake set, and the keys to the box truck had been removed and placed in Brook's personal toolbox in the back of the box truck. Although Brook had moved the box truck several times to re-position it to perform his tasks and it was moved by others after Brook fell, the box truck was not moving or running when Brook fell. It had been parked for approximately 45 minutes while Brook worked on the top cap.

    The court recognizes that the Oklahoma Supreme Court stated in Safeco that "'transportation use' cannot be conclusively defined," and "whether a use of an uninsured motor vehicle is related to the transportation nature of the vehicle is necessarily a question of fact to be determined in each case." 803 P.2d at 693. However, the court finds that no reasonable juror could conclude that Brook's use of CSTK's box truck was related to the transportation nature of the vehicle. While Brook points out that the box truck moved various times for him to perform his tasks and that it was moved by others after he fell, the Oklahoma Supreme Court explained

5

in Mayer that the law requires "*the uninsured vehicle be in use as a motor vehicle at the time of injury*." *Id*. at 291 (emphasis in original). Here, the box truck was not in use as a motor vehicle at the time of Brook's injuries. It was an immobile platform from which to work.

In his briefing, Brook relies upon two Oklahoma Supreme Court cases, Willard v. Kelley, 803 P.2d 1124 (Okla. 1990), and Byus v. Mid-Century Ins. Co., 912 P.2d 845, 847 (Okla. 1996). These cases are distinguishable. While the vehicle in Willard was not moving at the time of injury, it was "in a transportation mode" as it was running and in gear. 803 P.2d at 1131. The vehicle in Byus was moving at the time of injury. 912 P.2d at 847. In the case at bar, the box truck was not running or moving. It was parked, with the keys removed. The use of the vehicle by Brook was not related to the transportation nature of the vehicle, and his injuries were not connected to the transportation use.

The court agrees with Travelers that this case is similar to Pearson v. St. Paul Fire and Marine Insurance Company, Case No. CIV-05-0071-HE, wherein the Honorable Joe Heaton granted summary judgment in favor of the insurer on the issue of whether the insured was entitled to UM coverage under § 3636. In that case, the plaintiff, a lineman employed by Northwestern Electric Cooperative, Inc., was injured when he fell from a bucket which had been raised from a truck to work on an overhead power line. Judge Heaton found that the plaintiff could not demonstrate a causal connection between his injuries and the truck's transportation mode because, at the time of the accident, the truck "was simply the platform from which other, non-transportation activities were conducted and from which the injuries in question developed." *Id*. at doc. no. 19, ECF p. 5, attached to Traveler's motion, doc. no. 14, ex. 4, ECF p. 5.

The same is true in this case. Even viewing the facts and inferences from the facts in his favor, Brook cannot demonstrate a causal connection between his injuries

and the box truck's transportation mode.  The box truck was simply the platform for Brook to perform his work on the trailer unit, which was a non-transportation activity, and his injuries occurred from that non-transportation activity.  Therefore, the court concludes that Brook is not entitled to UM benefits under CSTK's insurance policy and Travelers is entitled to summary judgment with respect to its claim for declaratory relief alleged in the First Amended Complaint for Declaratory Judgment.

Conclusion

Accordingly, Plaintiff's Motion for Summary Judgment (doc. no. 14) is **GRANTED**.  Judgment shall issue separately.

DATED this 6th day of September, 2023.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

23-0420p002.rev.docx